## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BARTLEY MULLEN,           )
                                 )
        Plaintiff,        )    2:23-cv-01277
                                 )
v.                            )
                                 )
ASHIRWARD HOSPITALITY, LLC,   )
                                 )
        Defendant.     )

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Plaintiff Bartley Mullen brought this suit under the Americans with Disabilities Act (ADA), claiming that Defendant's hotel in Ligonier, Pennsylvania, violates the ADA by not having accessible beds for double amputees using a specific type of wheelchair, including him. Defendant moved to dismiss for lack of standing. For the reasons set forth herein, Defendant's Motion to Dismiss (ECF No. 20) is GRANTED without prejudice.

### I.    Background

Plaintiff Bartley Mullen is a double above-knee amputee. (ECF No. 18 ¶ 1). Defendant operates a hotel in Ligonier, PA. Mullen, per his Amended Complaint, wants to visit the hotel, but the "the mattress surface of the beds in the 'accessible' rooms in Defendant's hotel are 30 inches from the ground, thereby rendering it difficult if not impossible for Plaintiff to patronize Defendant's hotel, because he would not be able to transfer [himself] from his standard size 18-inch high wheelchair to the surface of Defendant's 30-inch beds." (*Id.* ¶ 3).

Mullen has never visited Defendant's hotel, but Mullen "regularly" travels throughout western Pennsylvania and generally desires to, in the future, visit the attractions in the Laurel

Highlands, the area in which Ligonier is located. (*Id.* ¶ 17). He reports that he desires to patronize Defendant's hotel, specifically, so that he has a place to stay when he visits Ligonier, Pennsylvania. (*Id.*).

Because Mullen says that he cannot stay in Defendant's hotel due to the mattress level, he brought this suit,[1] alleging that Defendant violated the ADA, 42 U.S.C. §§ 12181, *et seq.* Mullen seeks declaratory judgment and injunctive relief, as well as costs of suit and attorney's fees. (*Id.* at 10). Defendant filed a Motion to Dismiss for lack of standing, arguing that, regardless of which theory of standing the Court utilizes to conduct its analysis, Mullen's Amended Complaint shows that the Court lacks subject matter jurisdiction because Mullen lacks standing to assert his claims in federal court. (ECF No. 20).

As part of its Motion to Dismiss, Defendant argued that the Court should at that time stay the case pending the Supreme Court's decision in *Acheson Hotels v. Laufer*, 601 U.S. 1 (2023), which involved a similar, but not identical, standing issue in the ADA context. That decision came down in December 2023 during the pendency of the instant Motion to Dismiss. In *Acheson,* the Supreme Court vacated the lower court's decision and remanded the case for dismissal on mootness grounds. *Id.* at 5. Justice Thomas filed a concurring opinion (as did Justice Jackson, but her concurrence was focused on *vacatur* and is not relevant for these purposes) which reached the standing question presented to the Court here. Justice Thomas concluded that Laufer, the plaintiff below in that case, lacked standing to bring her ADA claims. *Id.* at 10 (Thomas, J., concurring).

---

[1] Mullen made identical allegations about a Pittsburgh hotel in another case. *Mullen v. Concord Hosp. Enters. Co., LLC*, No. 20-cv-01530, 2022 WL 295880 (W.D. Pa. Feb. 1, 2022). The complaint in that case survived a motion to dismiss, but it does not appear that standing was ever at issue or raised by the court. Instead, the defendant in that case relied on ADA regulations and its supposed compliance with said regulations in urging the court to dismiss Mullen's complaint.

Key to Justice Thomas's conclusion was that Laufer did not have an intent to visit the defendant hotel involved in that case. *Id.* at 13.

Both parties here filed responses to the *Acheson* decision. Defendant contends that the Court should adopt Justice Thomas's view of ADA standing and dismiss Mullen's Amended Complaint. (ECF Nos. 23, 26). Mullen, on the other hand, says that Justice Thomas's concurrence is inapplicable because, unlike Mullen, the plaintiff in *Acheson* had no desire to visit the defendant hotel. (ECF No. 24).

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may move to dismiss a plaintiff's complaint for lack of subject matter jurisdiction. Under Rule 12(b)(1), the Court "must accept as true all material allegations set forth in the complaint and must construe those facts in favor of the complaining party." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). "[W]hen standing is challenged on the basis of the pleadings, we 'accept as true all material allegations in the complaint, and . . . construe the complaint in favor of the complaining party.'" *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) (quoting *Warth*, 422 U.S. at 501); *see also Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73–74 (3d Cir. 2011).

## III.    Discussion

"Article III of the Constitution limits [the] federal 'judicial Power' to the adjudication of cases or controversies." *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009) (citing U.S. Const. art. III, § 2). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases

or controversies." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976). One aspect of the case or controversy requirement is standing; a litigant must show that they are the proper party to bring the underlying suit, and a litigant can make that showing by (1) alleging an actual or imminent injury particularized to them that (2) is fairly traceable to the defendant's conduct and that (3) is likely to be redressed by the relief sought. *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007); *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018).

Working backwards, both traceability and redressability are satisfied here. Defendant does not argue that either of these elements is not satisfied, as the beds in the hotel owned by Defendant are the undisputed cause of Mullen's purported injury, and an injunction requiring beds lower to the ground so that Mullen could better access them would likely remedy that injury.

Injury in fact is, however, at issue. Elements of the injury in fact inquiry become difficult to pin down where, such as here, a plaintiff seeks injunctive relief. The "actual," "imminent," "particularized," and "concrete" aspects of injury generally counsel against concluding that a plaintiff has suffered an injury where that plaintiff (1) has not suffered tangible consequences from the defendant's purportedly illegal conduct; and (2) does not expect to suffer an injury "imminently" because it is unclear when that plaintiff would try to access the good or service being denied or inadequately provided.

In light of this, courts conduct a somewhat altered standing analysis where a plaintiff seeks injunctive relief. In such instances, that plaintiff must "establish a real and immediate threat that he would again [be injured by the defendant's conduct]." *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) (citation and internal marks omitted). Courts evaluating claims under Title III of the ADA (such claims can only seek equitable relief, excluding costs and attorney's fees) have implemented even more precise standards—the intent to return, deterrent effect, and tester

4

standards—to determine whether the plaintiffs in those cases have suffered a legal injury. (*See* ECF No. 21 at 4). The Court will turn to consider whether Mullen has an injury in fact under any of those three tests. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 197 (3d Cir. 2016) ("We will therefore examine the allegations in the complaint from a number of different angles to see if Finkelman's purported injury can be framed in a way that satisfies Article III.").

### A. Intent to Return

The "intent to return" standing test says that courts should look to four factors to determine whether the plaintiff has suffered an injury in fact: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 539 (W.D. Pa. 2013) (citing *Harty v. Burlington Coat Factory of Pa., L.L.C.*, No. 11-cv-1923, 2011 WL 2415169, at *4 (E.D. Pa. June 16, 2011)). This is a factor test— no one factor is dispositive, and all factors need not be present. *Id.*

Mullen has not sufficiently demonstrated that he has suffered an injury in fact under the intent to return test. The Amended Complaint makes plain that Mullen has never stayed at Defendant's hotel, and his allegations concerning both his desire to stay at Defendant's hotel and the number of times Mullen would seek to return to Defendant's hotel are quite sparse and formulaic. That is, Mullen says that he wants to visit the attractions in the Laurel Highlands (ECF No. 18 ¶ 17), but he does not say whether this trip would be a one-off or a recurring event, nor does he explain the "when" and "why" of the desire to take this trip, nor does he demonstrate the inevitability of an overnight stay as part of any such trip. While Mullen's Amended Complaint does state that he is a resident of Beaver County, PA, (*id.* ¶ 34), which is roughly two (2) hours from Ligonier, Mullen does not state how or whether the distance between him and Defendant's

hotel factors into the equation or whether an overnight stay anywhere is an inevitable component of any sojourn he might make to the Laurel Highlands. Mullen's Brief in Opposition does not provide any further insight into the analysis that the Court is to conduct under this test. Instead, that Brief merely recapitulates Mullen's desire to have a "relaxing and restorative visit" at Defendant's hotel. (ECF No. 22 at 2). Such indefinite allegations fall far short of satisfying the factors set forth by the intent to return test. Therefore, under this test, Mullen lacks an injury in fact, and therefore, standing as well.

Perhaps sensing that the application of the intent to return to test would not turn out favorably to him, Mullen argues that the Court should not utilize this test. (*Id.* at 3). In support of this proposition, Mullen does not cite a single decision that disclaims or discounts the application of the intent to return test. Instead, Mullen cites remarks from President George H.W. Bush about how the ADA should be applied and federal standards and guidelines which, by Mullen's own admission, are flexible. (*Id.* at 4–5). Given that standing is a constitutional/prudential matter, arguments about statutory interpretation are somewhat misplaced. Nevertheless, the parties seem to agree that the intent to return test is not the only theory of standing that could potentially apply to Mullen, so Mullen is correct in that his inability to satisfy the intent to return does not necessarily mean that he (Mullen) lacks standing.

**B. Deterrent Effect**

"Under the deterrent effect test, a plaintiff is considered to have suffered an actual injury when he or she is deterred from patronizing a public accommodation because of accessibility barriers." *Anderson v. Franklin Inst.*, 185 F. Supp. 3d 628, 640 (E.D. Pa. 2016) (citation omitted). "To satisfy this test, a plaintiff must show that he or she has actual knowledge of barriers preventing equal access and a reasonable likelihood that the plaintiff would use the facility if not

for the barriers." *Garner v. VIST Bank*, No. 12–5258, 2013 WL 6731903, at *6 (E.D. Pa. Dec. 20, 2013).[2] Of the three injury tests, this one is where most of the disagreement between the parties lies. Much of the dispute is centered around the applicability, or lack thereof, of the Third Circuit's decision in *Mielo*.

The *Mielo* plaintiffs brought a class action against Steak 'n Shake, contending that Stake 'n Shake's restaurants were inaccessible to wheelchair-bound individuals. 897 F.3d at 473. Both of the named plaintiffs in *Mielo* had difficulty navigating "steep" parking facilities at Steak 'n Shake locations that they had been to several times. *Id.* at 474. On appeal, the court concluded that the plaintiffs had sufficiently alleged that they had suffered an injury and that the plaintiffs had standing. *Id.* at 482. In reaching this conclusion, the court went to great lengths to analyze standing's injury element and stated that the plaintiffs "have sufficiently alleged a concrete harm in the form of experiencing actual physical difficulty in ambulating through parking facilities which are allegedly not ADA-compliant. Moreover, because Plaintiffs allege they *personally* experienced these concrete injuries, we further conclude that they have sufficiently alleged an injury that is particular to them." *Id.* at 480. Importantly for these purposes, the court considered deterrence as part of its analysis: "[T]he injury providing Plaintiffs with standing to seek injunctive relief is not merely hypothetical or even imminent—it is *actual*, in that this allegedly unlawful deterrence is something that Plaintiffs are currently suffering." *Id.* at 480 n.15.

The parties dispute the significance of *Mielo* and, in particular, the quote pertaining to deterrent effect. Defendant relies on the fact that the *Mielo* plaintiffs had actually been to the locations that they (the *Mielo* plaintiffs) claimed were noncompliant with the ADA. *Id.* ("This

---

[2] The actual knowledge requirement is not in dispute here. The Court's conclusion under this test turns on whether there is a reasonable likelihood that Mullen would visit the hotel if not for the alleged inaccessibility.

allegation is supported by record evidence illustrating that Plaintiffs have visited many Steak 'n Shake restaurant locations in the past, and that Plaintiffs enjoy the food offered at those restaurants."). Because Mullen has never been to the hotel in question here, and because the Amended Complaint's assertions about Mullen's desire to visit the Laurel Highlands for an overnight stay are vague and, at best, quite indefinite, Defendant argues that Mullen is not truly "deterred" from staying at its property.

Defendant then cites a collection of cases from the District Courts within the Third Circuit in support of its position. In *Mortland v. Castle Hospitality*, the court concluded that plaintiff had standing where the plaintiff had already stayed at the hotel in question and intended to return to that hotel because that hotel was close to a race complex at which he instructed multiple times per year. No. 21-cv-1351, 2022 WL 3586661, at *1, *3 (W.D. Pa. Aug. 22, 2022). In *Giterman v. Pocono Medical Center*, the court concluded that the Plaintiff lacked standing because she had no "definitive appointment or plan to return to PMC for any treatment or test." 361 F. Supp. 3d 392, 407 (M.D. Pa. 2019). And in *Mahoney v. Waldameer Park, Inc.*, the court similarly concluded that the plaintiff lacked standing because his "alleged intent to visit the park lacks the requisite definitiveness. A vague, brief, unsupported assertion of intent to visit a public accommodation once access barriers are removed is still akin to a 'some day' plan." No. 20-cv-3960, 2021 WL 1193240, at *5 (E.D. Pa. Mar. 30, 2021)

Mullen, on the other hand, says that Defendant's argument, to paraphrase, is essentially "even though our discrimination against Mullen makes it impossible for Mullen to use our hotel, he is still precluded from enforcing his rights because he has no firm plans to use the hotel." (*See* ECF No. 22 at 8). Mullen then goes on to cite a Ninth Circuit decision which says that an ADA plaintiff need not have a "personal encounter" with an allegedly noncompliant hotel. *C.R. Educ.*

& *Enf't Ctr. V. Hosp. Props. Tr.*, 867 F.3d 1093, 1099 (9th Cir. 2017). This decision is in line with statutory text regarding this topic. 42 U.S.C. § 12188(a)(1) (providing that an ADA plaintiff need not engage in the "futile gesture" of attempting to gain access to show actual injury).

Taking these arguments one at a time, the Court concludes that *Mielo* is not instructive in the present circumstances. The *Mielo* plaintiffs' repeated visits to the noncompliant Steak 'n Shake locations is dissimilar to the instant matter given that Mullen has never been to Defendant's hotel. This reality undermines Mullen's assertion that the Court should rely on *Mielo* to conclude that he has standing. On the other hand, *Mielo's* express reference to deterrent effect with respect to class plaintiffs who, unlike the name plaintiffs in that case, had not visited the restaurant locations they sought to enjoin makes Defendant's arguments about *Mielo's* reliance on actual visitation less persuasive. In short, *Mielo* is too factually and procedurally distinct to move the needle for either Mullen or Defendant.

Second, the facts in Defendant's cited District Court cases are more akin to the facts here, and because of that, those cases are more applicable than *Mielo*, especially *Mahoney*. There, the court, conducting intent to return and deterrent effect tests, concluded that the plaintiff lacked standing, due in part to Mahoney's vague assertions about wanting to visit the defendant's theme park. *Mahoney*, 2021 WL 1193240, at \*5–\*6. Mahoney's lack of ties to the area, *id.* at \*5, coupled with a lack of a demonstrated plan to visit along with supporting reasons, compelled the conclusion that Mahoney lacked standing. *Mahoney*, though it involved website accessibility instead of physical accessibility, suggests that a plaintiff cannot merely claim that they intend to visit a location at some point in time down the road in order to generate standing under the deterrent effect test. There has to be something more tangible—there need not be an attempt to visit, 42 U.S.C. § 12188(a)(1), but there has to be *some* firm suggestion, beyond a vague desire to visit the

region at some future date, that the plaintiff in cases such as this is substantially likely to visit the facility in question if the alleged barriers are removed. An ADA plaintiff need not provide the Court with a literary work detailing their itinerary, but where an ADA plaintiff has not visited the facility in question, nor even pled that actual and definite plans to travel for an overnight stay in the Laurel Highlands were made and then foregone due to the bed heights at the Defendant's hotel, the plaintiff's averments about their desire to visit that facility should, at least, answer some basic questions about actual and not theoretical travel plans, such as "when," "why," and "how often." To put it more simply, a "some day" plan, by itself, does not cut it. *See Mahoney*, 2021 WL 1193240, at *4.

Here, the questions and issues set forth above went unanswered in the Amended Complaint. That is, there is nothing asserted in the Amended Complaint beyond Mullen's broad desire to visit the Laurel Highlands. Mullen spends two (2) paragraphs articulating his desire to patronize Defendant's hotel, and the most specific detail in either of those paragraphs is "[h]e specifically desires to patronize Defendant's hotel so that he has easy access to the historic town of Ligonier, Pennsylvania." (ECF No. 18 ¶ 17). While Mullen does assert that he was "previously" employed by a disability rights organization on behalf of which he engaged in travel for work, the use of the word "previously" indicates to the Court that Mullen's employment, and by extension, his work-related travel, is no longer ongoing. (*Id.* ¶¶ 10–12). This conclusion is buttressed by Mullen's "desire to visit the attractions in the Laurel Highlands," which suggests a recreational trip unconnected to work. (*Id.* ¶ 17). That is, there is no imminent, concrete, work-related travel scheduled for Mullen during which he must stay at Defendant's hotel. Mullen advances only a general desire to visit the area in which Defendant's hotel rests, and this general assertion, under the applicable law, is not enough. Mullen has advanced only a "some day" plan.

A contrary conclusion would mean that any individual who broadly stated that they intended to visit a general area "some day" would have standing to bring challenges to the ADA compliance of any and all of that area's public accommodations (assuming that the alleged noncompliance of those public accommodations would cause those individuals an injury). This far-reaching consequence is inconsistent with Article III's particularity and imminence requirements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Therefore, because Mullen's assertions regarding his desire to stay at Defendant's hotel do not evidence a sufficient likelihood that he actually and definitively would visit Defendant's hotel absent the beds available to him, Mullen does not have a particularized, imminent injury under the deterrent effect test, either.

The Court is sympathetic to the reality that Mullen alleges that he is, as a practical matter, unable to stay at Defendant's hotel. The Court is not unaware of the ways in which Mullen's physical impairments might impact Mullen's legal arguments given that the case law on point favors a showing of a more tactile injury that Mullen is unable to provide given that he has never visited Defendant's hotel. Mullen's other two cases on deterrent effect, outside of *Mielo*, go to great lengths to rebut the proposition that an ADA plaintiff must personally encounter the alleged noncompliance (*i.e,* actually visit the hotel) to have standing. *Hosp. Props. Tr.*, 867 F.3d at 1099–1100; *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136–37 (9th Cir. 2002).

But there is a distinction between holding that an ADA plaintiff must attempt to visit the location at issue to have standing and holding that an ADA plaintiff must allege more than a mere desire to one day visit the general regional location at issue. The Court is not holding that Mullen must engage in the "futile gesture" of actually visiting Defendant's hotel, finding a "too high" bed, and then leaving. Instead, the Court's conclusion rests upon the vagueness of Mullen's rationale

for visiting Defendant's hotel as part of a broad, indefinite, and generalized desire to tour the scenic region in which the hotel is located; the record before the Court is just too barebones to cut it, especially in light of the reality that the "'[t]he party invoking federal jurisdiction bears the burden of establishing' the elements of standing," notwithstanding the beneficial inferences drawn towards plaintiffs at the motion to dismiss stage. *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (citing *Lujan*, 504 U.S. at 561). The record before the Court falls short of meeting that burden. Consequently, Mullen lacks an injury, and therefore, standing, under the deterrent effect test.

### C. Tester

Only in a footnote in his Amended Complaint, Mullen claims to be a tester. (ECF No. 18 ¶ 26 n.3). Defendant, in its Motion to Dismiss and supplemental filings, argues that the Court should conclude that Mullen does not have tester standing and should rely upon Justice Thomas's concurrence in *Acheson* to reach that conclusion. Mullen does not assert that he has tester standing in the body of his Amended Complaint or in his Brief in Opposition to Defendant's Motion to Dismiss. Instead, he again utilizes only a footnote to advance his tester standing argument:

> Plaintiff was previously employed as a professional disability rights advocate, and he remains committed to advancing accessibility generally, particularly on behalf of individuals with mobility disabilities. He is cognizant of the fact that causing Defendant to offer beds that are accessible to him will also be impactful for other disabled hotel consumers who use standard size wheelchairs. Thus, he is seeking injunctive relief that is as broad as possible, and, in that capacity, he is acting not only on his own behalf but as a tester on behalf of himself and other similarly situated individuals.

(ECF No. 22 at 9 n.5).

First, the Court notes that passing reference to an argument only in a footnote (or, here, footnotes) is highly disfavored. Courts at both the trial and appellate level have concluded that a

failure to raise an argument in the body of a brief or pleading means that argument is forfeited. *See, e.g.*, *Lara v. Comm'r Pa. State Police*, 91 F.4th 122, 140 n.28 (3d Cir. 2024) (citations omitted); *Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023); *Purewick Corp. v. Sage Prod., LLC*, 666 F. Supp. 3d 419, 441 n.14 (D. Del. 2023); *City of Phila. v. Bank of Am. Corp.*, 498 F. Supp. 3d 516, 537 (S.D.N.Y. 2020); *Greer v. Advanced Equities, Inc.*, 683 F. Supp. 2d 761, 766 (N.D. Ill. 2010).

Here, Mullen did not raise tester standing anywhere in his Amended Complaint or Brief in Opposition outside of the two footnotes cited above. And when he does raise tester standing via those footnotes, he does not actually say that he is in fact operating as a tester, but as he phrases it, he should be considered a tester if that gets him standing. Nevertheless, because tester standing has been obliquely mentioned by Mullen and was discussed at length by Defendant in its Motion to Dismiss, and because the Court previously Ordered the parties to address Justice Thomas's concurrence in *Acheson*, which thoroughly addressed tester standing, the Court will examine whether Mullen has tester standing. *See Mahoney*, 2021 WL 1193240, at *7 (after noting that Mahoney does not claim to be a tester, stating that "[t]he Court will nonetheless address 'tester standing' in the event the Amended Complaint can be liberally construed to raise the issue"). *But see id.* at *7 n.5 ("Some courts in this Circuit have declined to evaluate whether a plaintiff who alleges personal motivations for visiting a public accommodation has tester standing.") (citations omitted). The Court nonetheless cautions the parties that the Court may not again consider arguments that are not raised in the body of the parties' filings. Merits arguments should not be raised only in a footnote.

"A 'tester' is an individual who, without actual intent to avail themselves of the goods or services of a public accommodation, nonetheless poses as a purchaser to collect evidence of

unlawful practices." *Mortland v. Omni Pittsburgh Corp.*, No. 18-cv-1067, 2021 WL 101560, at *3 (W.D. Pa. Jan. 12, 2021). Here, to the contrary, in his Amended Complaint, Mullen states that he has an actual, but quite indefinite, desire to tour the Laurel Highlands and stay at the Defendant's hotel.

Whether testers who allege claims under Title III of the ADA have standing has not been directly addressed by the Third Circuit, but courts in this District have held that ADA testers have standing. *Id.* at *7 (citations omitted); *Omni Pittsburgh*, 2021 WL 101560, at *3; *Heinzl v. Cracker Barrel Old Country Stores, Inc.*, No. CV 14-1455, 2016 WL 2347367, at *1 (W.D. Pa. Jan. 27, 2016), *report and recommendation adopted as modified sub nom. Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 14-cv-1455, 2016 WL 1761963 (W.D. Pa. Apr. 29, 2016) ("[G]iven the remedial purposes of Title III and the role assigned by Congress to private enforcement of its provisions, the benefit of the doubt as to standing should be accorded even to the 'tester' plaintiff.") (citation and internal marks omitted); *Murphy v. Bob Cochran Motors, Inc.*, No. 19-cv-239, 2020 WL 6731130, at *7 (W.D. Pa. Aug. 4, 2020), *report and recommendation adopted*, No. 19-cv-239, 2020 WL 5757200 (W.D. Pa. Sept. 28, 2020) ("Here, Murphy should be afforded the benefit of any doubt and his allegation that he was acting as an ADA tester gives him constitutional standing to bring his claim."). *But cf. Macy's, Inc.*, 943 F. Supp. 2d at 541 n.12 (collecting cases and rejecting the need to decide standing on a tester theory).

This Court has previously addressed tester standing in two of these cases: *Cracker Barrel* and *Macy's*. In *Cracker Barrel*, this Court adopted a report and recommendation that concluded that the plaintiff class representative satisfied Federal Rule of Civil Procedure 23's typicality requirement via her status as a tester. 2016 WL 2347367, at *21. Importantly, however, with respect to individual standing, this Court found that the plaintiff representative had previously

patronized the defendant accommodation, and as this Court then noted, "when a plaintiff has presented a class action complaint, the issue of standing is limited to the plaintiff's individual standing, not whether the plaintiff can challenge policies as they relate to a multitude of locations. Rather, that is an issue of class certification." *Id.* at *18. Thus, reliance on *Cracker Barrel* here is misplaced, as (1) the plaintiff had previously patronized the defendant accommodation; and (2) any discussion of tester standing in that case was specific to class action requirements under Federal Rule of Civil Procedure 23, which are not at issue here.

As for *Macy's*, after noting a circuit split on the issue of tester standing under the ADA, this Court concluded that it would be "improvident" to decide tester standing in that case. *Macy's, Inc.*, 943 F. Supp. 2d at 541 n.12. Thus, neither of this Court's prior decisions that address tester standing are binding on it here.

Further, those decisions are not controlling here in light of the substantial updates to the case law since the decisions set forth above were issued. Consequently, the Court will not rely only on the decisions of the courts in this District to assess whether Mullen has tester standing.

Those updates to case law on standing, and in particular, on the injury in fact requirement, stem not from cases where the plaintiffs brought claims under the ADA, but from cases where the plaintiffs brought claims under the Fair Credit Reporting Act.

In *Spokeo v. Robins*, the Supreme Court determined that certain intangible harms could qualify as an injury in fact under Article III. 578 U.S. 330, 340–41 (2016). When determining whether an intangible harm qualifies as an injury in fact, *Spokeo* instructs courts to "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 341 (citation

omitted). *Spokeo* also counsels that "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id.* However, the Court cautioned that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Even where Congress has identified a particular harm to be remedied via a given statutory scheme, "Article III standing [still] requires a concrete injury." *Id.* Thus, even though *Spokeo* instructs courts to look to congressional action in determining whether a plaintiff has suffered an injury in fact, congressional action is not necessarily probative, as Article III's requirements must be independently satisfied by a concrete injury that is "real, and not abstract." *Id.* at 340.

The Supreme Court further explained and applied *Spokeo* in *TransUnion v. Ramirez*. 594 U.S. 413 (2021). There, the Court affirmed that, in determining whether a plaintiff has suffered a sufficiently concrete harm for purposes of Article III, courts should "ask[] whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* at 424. However, the Court spent a significant portion of the Opinion explaining its guidance from *Spokeo*: "*Spokeo* is not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id.* at 424–25. The Court went on to cabin *Spokeo*'s language about the instructive nature of congressional action when courts conduct a standing inquiry, stating that although "Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations, . . . under Article III, an injury in law is not an injury in fact." *Id.* at 427. In sum, "the fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of

government, standing alone, will not save it if it is contrary to the Constitution." *Id.* at 430–31 (citation omitted).

In applying these principles to certain members of the class in *TransUnion*, the Court concluded that those class members failed to demonstrate that their risk of future harm was sufficiently concrete because said risk of harm was too speculative. *Id.* at 438. The plaintiffs there failed to demonstrate that there was a "sufficient likelihood" that they would be harmed by TransUnion's allegedly unlawful practices. *Id.*

In the wake of *Spokeo* and *TransUnion*, courts have applied the principles set forth above to plaintiffs asserting claims under the ADA. In *Calcano v. Swarovski North America Ltd.*, various individuals brought suit under the ADA against stores that failed to carry braille gift cards. 36 F.4th 68, 71 (2d Cir. 2022). Applying *Spokeo* and *TransUnion*, the *Calcano* court stated that, in the ADA context, the key inquiry is whether the plaintiff demonstrates an "intent to return based on past visits and proximity . . . to ensure that 'the risk of harm is sufficiently imminent and substantial' to establish standing." *Id.* at 74–75 (quoting *TransUnion*, 594 U.S. at 435). Despite the *Calcano* plaintiffs having visited the defendant stores in the past, the court concluded that the plaintiffs' "assertions of proximity and prior visits are vague, lacking in support, and do not plausibly establish that Plaintiffs intended to return to the subject location." *Id.* at 76 (citation and internal marks omitted).

As to claims involving ADA compliance where the plaintiff has never personally visited the defendant's public accommodation, the courts of appeals are split. Laufer, herself a self-described tester who scanned hotel websites in her effort to ensure that those websites were ADA compliant and then brought suit against noncompliant defendants, single-handedly generated a Circuit split before reaching the Court in *Acheson. Acheson*, 601 U.S. at 3. The Second, Fifth, and

Eleventh Circuits held that Laufer lacked standing. *Laufer v. Ganesha Hosp. LLC*, No. 21-995, 2022 WL 2444747 (2d Cir. July 5, 2022); *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269 (5th Cir. 2021*)*; *Laufer v. Looper*, 22 F.4th 871 (10th Cir. 2022). The First, Fourth, and Eleventh Circuits held that she had standing. *Laufer v. Acheson Hotels*, LLC, 50 F.4th 259 (1st Cir. 2022), *vacated as moot by* 601 U.S. 1 (2023); *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156 (4th Cir. 2023); *Laufer v. Arpan LLC*, 29 F.4th 1268 (11th Cir. 2022), *vacated as moot by* 77 F.4th 1366 (11th Cir. 2023).[3]

Of the cases applying *Spokeo* and *TransUnion's* principles to "tester" claims brought under the ADA, *Ganesha* is most on point. In most of Laufer's standing cases, Laufer acknowledged that she had no intention of visiting the defendant hotel; in those cases, she was a "pure" rather a than "hybrid" tester. But in *Ganesha*, like Mullen, Laufer said that she "intends to travel throughout the entire State [of Connecticut] as soon as the Covid crisis is over." *Ganesha*, 2022 WL 2444747, at *2. Despite Laufer's assertions of plans to visit the general area in which the defendant hotel was located, the Court concluded that Laufer lacked standing, as the court rejected the "informational harm" theory of standing where there were no "downstream consequences" of said informational harm. *Id.* (citing *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022)). That is, because Laufer could not advance more than a "some day" plan to visit the area in which the defendant hotel was located, she lacked a concrete injury. *Id.*

Here, like Laufer (and the *Calcano* plaintiffs), Mullen only alleges an indefinite, "some day" plan to visit the area in which Defendant's hotel is located. Like Laufer, he claimed (in

---

[3] The D.C. and Seventh Circuits also considered whether Laufer had standing. The D.C. Circuit concluded that Laufer lacked standing in a summary order, *Laufer v. Alamac Inc.*, No. 21-7056, 2021 WL 4765435 (D.C. Cir. Sept. 10, 2021), and the Seventh Circuit stayed the appeal in Laufer's case in light of the Supreme Court's grant of Certiorari in *Acheson*. *Laufer v. Rasmus*, No. 21-1360, 2023 WL 2754710 (7th Cir. Apr. 3, 2023); *see also* Ahslyn Dewberry, Note, *Testing the Limits of Virtual Compliance: "Tester" Plaintiffs, and Article III Standing Under the ADA*, 58 Ga. L. Rev. 935 (2024).

footnotes) to be a tester and contacted Defendant, via remote means, to determine whether Defendant was compliant with the ADA. The only distinction between the two methods of outreach is that Laufer browsed websites to ensure ADA compliance while Mullen placed a phone call. That Laufer alleged "informational" harm for a noncompliant website whereas Mullen alleges "actual" harm via a noncompliant hotel room is of no moment given that Mullen has never actually attempted to visit, and advances no concrete plans to visit, Defendant's hotel or the Laurel Highlands. To put it more precisely, Mullen's assertions about his intent to patronize Defendant's hotel are "vague, lacking in support, and do not plausibly establish that Plaintiff[] intend[s] to return to the subject location." *Calcano*, 36 F.4th at 76 (citation and internal marks omitted). Thus, notwithstanding Mullen's characterization of his injury, because Mullen has failed to visit Defendant's hotel and lacks a firm plan to do so in the future, he has suffered only informational and/or stigmatic harm, both of which the *Ganesha* court rejected as insufficient to assert an injury in fact under like circumstances. *Ganesha*, 2022 WL 2444747, at *2–*3.

This Court concludes that the path charted by the *Ganesha* court is instructive. An alleged violation of the law, by itself, does not automatically confer upon this Court the judicial power to resolve a case. *Acheson*, 601 U.S. at 11 (Thomas, J., concurring) (citing *Cohens v. Virginia*, 6 Wheat. 264, 405, 19 U.S. 264 (1821)); *TransUnion*, 594 U.S. at 427. To trigger the exercise of the federal judicial power, a plaintiff must be herself "among the injured," and a "some day" plan "without any description or concrete plans" does not cut it. *Lujan*, 504 U.S. at 563, 564; *see also Cocano*, 36 F.4th at 76.

Therefore, where, as here, a plaintiff brings a claim alleging that a public accommodation is noncompliant with the ADA, that plaintiff, to sufficiently assert an injury in fact under a tester theory, given that an injury be "concrete," "imminent," "actual," and "particularized," must have

either already personally visited that public accommodation or allege a specific and definite plan to imminently visit that public accommodation. Vague generalizations about an intent to one day visit the region in which the defendant accommodation is located are not enough. A contrary ruling could allow testers to exercise "'the sort of proactive enforcement discretion properly reserved to the Executive Branch,' with none of the corresponding accountability," *Acheson*, 601 U.S. at 13 (Thomas, J., concurring) (citation omitted), and the notion that testers could become their own private "attorneys general" in such circumstances is inconsistent with the case or controversy requirement of the Constitution and with the statutory scheme of Title III of the ADA given that such does not provide for what are essentially *qui tam* actions.

Here, Mullen has asserted little beyond an indefinite plan to visit the region in which Defendant's hotel is located and a desire, on behalf of all similarly situated individuals, to ensure that Defendant's hotel is ADA compliant. Mullen has also failed to assert any historical analogue for the type of harm that he has allegedly suffered that demonstrates that his alleged harm here is one that has been historically recognized as a legally cognizable injury. Under a tester theory, such unspecified assertions and a lack of historical support do not confer upon Mullen an injury in fact, and therefore, Mullen lacks standing.

## IV.    Conclusion

Because Mullen has not demonstrated that he has suffered an injury in fact under the intent to return, deterrent effect, and tester standards, Mullen does not have standing. Accordingly, Defendant's Motion to Dismiss is GRANTED.

Because this dismissal is for want of subject matter jurisdiction, and because the Court cannot conclude that the deficiencies in Mullen's Amended Complaint could not be cured by

further amendment, granting leave for amendment is the proper course. *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980) ("A dismissal for lack of jurisdiction is plainly not a determination of the merits of a claim. Ordinarily, such a dismissal is 'without prejudice.'"); *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 164 n.7 (3d Cir. 2017); *Mahoney*, 2021 WL 1193240 at *3 (concluding that Rule 15(a) permits plaintiffs to cure subject matter jurisdiction defects and that the time of filing rule is not implicated where the amended complaint does not raise new allegations). The Court does note that repeated failure to cure deficiencies in the complaint is a basis for dismissal with prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *First Annapolis Bancorp, Inc. v. United States*, 109 Fed. Cl. 646, 649 (2013) (stating that dismissals for lack of standing should generally be without prejudice subject to the condition that "a dismissal with prejudice is . . . appropriate . . . where it [is] plainly unlikely that the plaintiff [will be] able to cure the standing problem."). Thus, given the details and reasoning set out in this Opinion, absent extraordinary circumstances, the filing of a Second Amended Complaint will be Mullen's last shot at advancing his claims in this Court.

Mullen's Second Amended Complaint, should he elect to file one, shall be filed not later than twenty-one (21) days from the date of this Order. Defendant's response to a Second Amended Complaint, whether it takes the form of an Answer or a Federal Rule of Civil Procedure 12 Motion, is due within twenty-one (21) days of the filing of Mullen's Second Amended Complaint.

An appropriate Order will issue.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated:  March 5, 2024

21