IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARTLEY MULLEN, | ) |
| | ) |
| Plaintiff, | ) 2:23-cv-01277 |
| | ) |
| v. | ) |
| | ) |
| ASHIRWARD HOSPITALITY, LLC, | ) |
| | ) |
| Defendant. | ) |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Plaintiff Bartley Mullen brings this suit under the Americans with Disabilities Act (ADA), claiming that Defendant's hotel violates the ADA by not having accessible beds, by failing to provide properly marked accessible parking with adequate access aisles, and by providing inaccurate information about the accessibility of Defendant's facilities. On Defendant's motion, the Court dismissed without prejudice Plaintiff's First Amended Complaint for lack of standing. Now, Plaintiff has filed a Second Amended Complaint, and Defendant has again moved to dismiss for lack of standing. For the reasons below, Plaintiff's Second Amended Complaint does not suffer from the same infirmities as his first and meets the mark for this action to proceed further in this Court.

Therefore, Defendant's Motion to Dismiss (ECF No. 31) is DENIED.

**I.   Background**

**A.   Article III Standing**

For a case to fall within the jurisdiction of the federal courts, the plaintiff must have standing to bring suit. *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (citing *ACLU-NJ v. Township of Wall*, 246 F.3d 258, 261 (3d Cir. 2001)). A plaintiff has

1

standing if (1) they have suffered an injury in fact, (2) that injury is fairly traceable to the defendant's challenged conduct, and (3) that injury is redressable by the court. *Id.* at 296 (citing *Soc'y Hill Towers Owners' Assoc. v. Rendell*, 210 F.3d 168, 175-76 (3d Cir. 2000)).

Here—as on Defendant's previous motion to dismiss—the only real dispute is whether Plaintiff has adequately pleaded an injury in fact.[1] "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Where a plaintiff seeks injunctive relief, that plaintiff must "establish a real and immediate threat" that he would be injured by the defendant's conduct. *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). This means that a plaintiff may not seek an injunction under Title III of the ADA "unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." *Mullen v. DSW Inns, LLC*, No. 23-520, 2024 WL 1095718, at *3 (W.D. Pa. Mar. 13, 2024) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 561 (3d Cir. 2002)).

Courts have applied a few frameworks to evaluate standing to bring suit under Title III. Under the "Intent to Return" framework, courts consider four factors to determine whether it is likely that the plaintiff will visit the place of the alleged ADA violation, and "therefore whether the threat of [future] injury is concrete and particularized." *Id.* at *4 (quoting *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 539 (W.D. Pa. 2013)). Courts consider "(1) the plaintiff's proximity to

---

[1] As the Court noted in its previous Opinion, (ECF No. 27 at 4), and as Defendant does not contest, both the causation and redressability requirements are easily satisfied here. The cause of Plaintiff's alleged injury is Defendant's failure to provide accessible beds, to provide accessible parking spots, and to accurately represent the hotel's accessibility status. An injunction requiring Defendant to correct these deficiencies would remedy these injuries.

2

the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." *Id.* (quoting *Anderson*, 943 F. Supp. 2d at 539).

Under the "Deterrent Effect" framework, courts ask whether the plaintiff has shown "that he or she has actual knowledge of barriers preventing equal access and a reasonable likelihood that the plaintiff would use the facility if not for the barriers." *Garner v. VIST Bank*, No. 12-5258, 2013 WL 6731903, at *6 (E.D. Pa. Dec. 20, 2013) (citing *Kratzer v. Gamma Mgmt. Grp., Inc.*, No. A 04-6031, 2005 WL 2644996, at *3 (E.D. Pa. Oct. 12, 2005)). While the theory of injury is different, the end point of the Court's inquiry under either the intent-to-return or deterrent-effect framework is the same: a determination of whether the plaintiff pled sufficient facts giving rise to a plausible inference that they will suffer future discrimination by the defendant. *See Pryor*, 288 F.3d at 561.

District courts in the Third Circuit have also recognized "tester" standing in the context of Title III claims. (*See* ECF No. 27 at 14 (compiling cases)). "A 'tester' is an individual who, without actual intent to avail themselves of the goods or services of a public accommodation, nonetheless poses as a purchaser to collect evidence of unlawful practices." *Mortland v. Omni Pittsburgh Corp.*, No. 18-1067, 2021 WL 101560, at *3 (W.D. Pa. Jan. 12, 2021). As discussed at length in the Court's opinion on Defendant's previous motion to dismiss, the continued vitality of tester standing has been thrown into question by the Supreme Court's decisions in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), and *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). (ECF No. 27 at 15-18). Since *TransUnion*, the circuit courts have split over whether testers—those without any intent to patronize the public accommodation at issue—have standing to a bring suit such as this one. (*See* ECF No. 27 at 17-18). After surveying the state of the law, this Court concluded:

> where, as here, a plaintiff brings a claim alleging that a public accommodation is noncompliant with the ADA, that plaintiff, to sufficiently assert an injury in fact

3

under a tester theory, . . . must have either already personally visited that public accommodation or allege a specific and definite plan to imminently visit that public accommodation. Vague generalizations about an intent to one day visit the region in which the defendant accommodation is located are not enough.

(ECF No 27 at 19-20).

### B.  Plaintiff's First Amended Complaint

The Court dismissed Plaintiff's First Amended Complaint because it failed to establish standing under either the intent-to-return or the deterrent-effect framework. For each analysis, the First Amended Complaint's fatal flaw was its lack of definiteness with respect to Plaintiff's plans to visit Defendant's hotel. (*See* ECF No. 27 at 5-6, 9-10). Plaintiff's averments about his travel plans were "quite sparse and formulaic." (ECF No. 27 at 5). Plaintiff "advance[d] only a general desire to visit the area in which Defendant's hotel rests" and failed to answer "some basic questions about actual and not theoretical travel plans, such as 'when,' 'why,' and 'how often.'" (ECF No. 27 at 10). Plaintiff's First Amended Complaint "advanced only a 'some day' plan," (ECF No. 27 at 10), and a "some day" plan does not cut it, *see Lujan*, 504 U.S. at 564.

The Court also concluded that Plaintiff's First Amended Complaint failed to establish "tester" standing because Plaintiff did not allege concrete plans to visit Defendant's hotel: "Here, [Plaintiff] has asserted little beyond an indefinite plan to visit the region in which Defendant's hotel is located and a desire, on behalf of all similarly situated individuals, to ensure that Defendant's hotel is ADA compliant." (ECF No 27 at 20).

Because the Court could not conclude that the First Amended Complaint's jurisdictional defects were incurable, the Court dismissed that version of the complaint without prejudice. (ECF No. 27 at 20-21). But the Court noted that a repeated failure to cure deficiencies in a complaint is grounds for dismissal with prejudice and warned that Plaintiff's Second Amended Complaint—if

4

he chose to file one—would be Plaintiff's last shot to bring his claims before the Court. (ECF No. 27 at 21).

      C.      **Plaintiff's Second Amended Complaint**

Plaintiff filed a Second Amended Complaint on March 26. (ECF No. 29). Through his Second Amended Complaint, Plaintiff attempts to remedy the deficiencies identified in the Court's prior Opinion. The Second Amended Complaint contains significantly more information regarding Plaintiff's travel plans and his intention to visit Defendant's hotel. In addition to what was included in the First Amended Complaint, Plaintiff pleads the following:

- "To Plaintiff's knowledge, Defendant's hotel is the only full-service hotel that is in the town of Ligonier. The hotel is approximately a 1 hour and 45-minute drive from Plaintiff's home." (ECF No. 29 ¶ 8).
- "Plaintiff's health issues limited his ability to travel during much of 2023." (ECF No. 29 ¶ 16).
- "Because his mobility and ability to travel will be significantly compromised as his disease process progresses, Plaintiff will be travelling frequently within western Pennsylvania to visit sites and locations that are appealing to him while he still can do so." (ECF No. 29 ¶ 17).
- "Plaintiff has driven through the Laurel Highlands region multiple times in the past, and he finds the area to be very appealing." (ECF No. 29 ¶ 18).
- "Plaintiff will travel to the Laurel Highlands during the mid to late summer of 2024 to visit the town of Ligonier, Fort Ligonier, and Fallingwater. He will travel in his accessible van and stay overnight at a hotel for two days during the visit, and he would prefer to patronize an economical hotel near the town of Ligonier." (ECF No. 29 ¶ 20).
- "Plaintiff will also travel to the Laurel Highlands during the fall foliage season of 2024." (ECF No. 29 ¶ 21).
- "It is difficult for Plaintiff to plan a specific itinerary for an overnight trip substantially in advance given his fluid health issues. That is, while it is reasonable for Plaintiff to plan a trip that is to occur on unspecified days during a multi-week period of the summer/fall of 2024, it is difficult to pick specific dates until Plaintiff can assess his health status closer in time to the actual travel dates." (ECF No. 29 ¶ 22).
- "Plaintiff desires to patronize Defendant's specific hotel because it is inexpensive and ideally located for his visits to the Laurel Highlands during the mid to late summer of 2024 and during the fall foliage season in 2024." (ECF No. 29 ¶ 26).

Plaintiff also asserts that he "understands the role of a tester in civil rights litigation"; that he is "extremely motivated to be a tester in this case"; that he visited Defendant's hotel and

identified additional ADA violations in the form of non-compliant "accessible" parking spots; and that these non-compliant parking spaces—i.e., those without access aisles—are "particularly problematic for a van user like Plaintiff." (ECF No. 29 ¶¶ 29-30).

Defendant argues that Plaintiff has still not done enough, that "Plaintiff's allegations still amount to no more than the 'some day' plans that have been repeatedly rejected by courts." (ECF No. 32 at 1). "Plaintiff's new allegations," Defendant argues, are "no more specific than his previously articulated generalized intent to visit the area." (ECF No. 32 at 1-2). According to Defendant, Plaintiff's new averments regarding his travel plans provide nothing more than "a vague allegation that Plaintiff might visit the Laurel Highlands area sometime in the approximately six month period covering the summer and fall of 2024." (ECF No. 32 at 7).

Defendant argues that "Plaintiff makes no detailed allegations regarding his prior travel to the area . . . nor does he provide anything beyond a broad swatch of future time in which he might visit attractions in the area." (ECF No. 32 at 12). While Plaintiff has named attractions he wishes to visit, he "has made no attempt to schedule a visit to any location or purchase a ticket which would support his alleged plans to visit the area." (ECF No. 32 at 12). Further, Defendant complains that "none of the statements made in the Complaint are supported by a sworn statement of the Plaintiff regarding his plans." (ECF No. 32 at 12).

Finally, Defendant argues that the Second Amended Complaint fails to adequately plead that Plaintiff has tester standing. According to Defendant, "[e]ven assuming that [plaintiff] can allege that he was deprived of information to which he is entitled by the ADA, he must also allege downstream consequences from failing to receive the required information in order to have an Article III injury in fact." (ECF No. 32 at 16 (quoting *Laufer v. Ganesha Hosp. LLC*, No. 21-995, 2022 WL 2444747, at *2 (2d Cir. July 5, 2022))). And "[a]s with Plaintiff's allegations related to

the deterrent effect test, the allegations regarding Plaintiff's travel plans do not establish the downstream consequences necessary to establish standing." (ECF No. 32 at 16).

## II.   Legal Standard

The plaintiff has the burden of establishing standing "with the manner and degree of evidence required" at that stage in the proceedings. *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan*, 504 U.S. at 561). A defendant may challenge the plaintiff's standing by filing a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. When evaluating a motion to dismiss for lack of standing, the Court "must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." *Storino*, 322 F.3d at 296 (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

## III.   Discussion

Taking the factual allegations in the Second Amended Complaint as true and drawing all plausible inferences in Plaintiff's favor, as the Court is required to do at this preliminary stage in the proceedings, *id.*, the Court concludes that Plaintiff's Second Amended Complaint contains sufficient facts to permit the Court to draw a plausible inference that Plaintiff will experience an injury in fact that is caused by Defendant and redressable by the Court.

Unlike the First Amended Complaint, Plaintiff's Second Amended Complaint fleshes out key details of Plaintiff's travel plans, namely the when, why, and how often he would visit Defendant's hotel were it accessible. Plaintiff pleads that he intends to travel to Laurel Highlands for multi-day trips on at least two separate occasions: once during the mid- to late-summer 2024

to visit the Laurel Highlands, and once during fall foliage season.[2] (ECF No. 29 ¶¶ 20-21). Plaintiff explains why he has not identified specific dates for his travel: the exact dates of the fall foliage season cannot be predicted far in advance; and while his health will not prevent him from traveling to the Laurel Highlands, his fluctuating condition makes it difficult for him to nail down a specific date. (ECF No. 29 ¶ 22; ECF No. 33 at 5-6).

Plaintiff also explains why he will be traveling to the Laurel Highlands. Plaintiff pleads that he suffers from a degenerative health condition and would like to travel while he still can. (ECF No. 29 ¶ 17). He has visited the Laurel Highlands region multiple times in the past and would like to return. (ECF No. 29 ¶¶ 17-18). Further, Plaintiff explains why he would stay at Defendant's hotel on his trips to the Laurel Highland's if the hotel were accessible. During his trips to the Laurel Highlands, Plaintiff would stay overnight: Plaintiff lives in Beaver, PA, over an hour and forty-five minutes away from the Laurel Highlands. (ECF No. 29 ¶¶ 2, 8, 20). If it were accessible, Plaintiff would stay at Defendant's hotel specifically because, to Plaintiff's knowledge, Defendant is the only full-service hotel in Ligonier, (ECF No. 29 ¶ 8), and Defendant's hotel is economical, (ECF No. 29 ¶¶ 9, 20). Plaintiff's Second Amended Complaint goes beyond advancing mere "some-day" intentions.[3]

---

[2] Defendant claims this is nothing more than "a vague allegation that Plaintiff might visit the Laurel Highlands area sometime in the approximately six month period covering the summer and fall of 2024." (ECF No. 32 at 7). The Court disagrees with Defendant's characterization. First, while mid- to late-summer is a longer period, fall foliage season in Western Pennsylvania is only a few weeks long. And second, and more substantively, the aim of the Court's inquiry is determining whether the harm will occur, not precisely when it will occur. While details such as specific dates are helpful for the Court to determine whether Plaintiff will actually travel, they are not necessary, so long as Plaintiff pleads sufficient facts, which if true, would support a plausible inference that the travel (and therefore the discrimination) will occur.

[3] Defendant argues that Plaintiff "provides no evidence he has any plans to actually visit [landmarks in the area], including the potential purchase of tickets to attractions." (ECF No. 39 at 7-8). This is an argument for summary judgment. At this stage in the proceedings, Plaintiff need

Given the increased definiteness and specificity with which Plaintiff has described his travel plans, the Court concludes that Plaintiff's Second Amended Complaint "allege[d] facts giving rise to an inference that he will suffer future discrimination by the defendant." *Pryor*, 288 F.3d at 561. Accordingly, the Court concludes that Plaintiff has adequately pleaded an injury in fact. This is true, regardless of what framework guides the Court's analysis.

Applying the intent-to-return framework, the Court considers four factors to determine whether Plaintiff is likely to experience future discrimination by Defendant: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." *DSW Inns, LLC*, 2024 WL 1095718, at *4.

Here, the first factor weighs in favor of finding standing. Plaintiff lives approximately two (2) hours from Defendant's hotel. (ECF No. 29 ¶ 8). This distance is short enough that it is plausible that Plaintiff would go on a multi-day trip to the Laurel Highlands, but long enough that Plaintiff would plausibly not want to return home at the end of each day. The second factor (past patronage) weighs against finding standing. Though Plaintiff asserts that he has been to Defendant's hotel, he does not assert that he has ever stayed there. (*See* ECF No. 32 at 7). But in

---

not plead evidence, so long as he plausibly alleges that he intends to visit these attractions. Defendant also complains that Plaintiff does not provide "even a general description of what a trip during the fall foliage season would entail." (ECF No. 32 at 8). The Court is not troubled by the absence of this detail. First, the Court does not conclude that settled standing law requires the Plaintiff to pony up funds for timed tickets for a venue that charges for visits. And in what the Court concludes is common experience, the cost to observe the leaves of the Western Pennsylvania landscape when it is ablaze in the "Colors of Fall" is zero. The Court may and does plausibly infer that Plaintiff's trip during the fall foliage season would entail what all such trips presumably entail: namely, viewing and enjoying the fall foliage. Further, it appears to be beyond dispute that as of the date of this Opinion, it remains "Fall" in Western Pennsylvania, and a cursory examination of the deciduous trees in any part of this region would reveal that many if not most still have green leaves, allowing for the inference that the time for "leaf peeping" of multi-colored foliage remains open and has not yet fully arrived, let alone expired.

the Court's judgment, such is not determinative, since the gravamen of this action is that he can't stay at Defendant's hotel because it's not accessible. The third factor (definiteness of the Plaintiff's plans) weighs in favor of finding standing for all the reasons discussed above. And the fourth factor weighs slightly in favor of finding standing. Plaintiff alleges that he has visited the region on multiple occasions, (ECF No. 29 ¶ 18), and while he does not provide "timetable" levels of detail about his ongoing travel to the region to enable the Court to evaluate this factor with clockwork precision, as noted above, his stated plans are not mere aspirations.

Considering all four factors together but giving particular weight to the third factor, *see Anderson*, 943 F. Supp. 2d at 540 (writing that the definitiveness of plaintiff's plans is "of great importance"), the Court concludes that Plaintiff has sufficiently alleged an injury in fact.

Applying the deterrent-effect framework, the Court evaluates whether Plaintiff has shown "that he or she has actual knowledge of barriers preventing equal access and a reasonable likelihood that the plaintiff would use the facility if not for the barriers." *Garner*, 2013 WL 6731903, at *6 (citing *Kratzer*, 2005 WL 2644996, at *3). First, there is no question that Plaintiff has actual knowledge of the barriers that Plaintiff claims prevent equal access. Plaintiff called Defendant's hotel and confirmed that it does not have the beds that Plaintiff believes are required. (ECF No. 29 ¶ 10). Plaintiff physically visited Defendant's hotel and saw that they do not have the parking spots that he believes they are required to provide. (ECF No. 29 ¶ 30). And Plaintiff knows by his observations that Defendant's website provides information that Plaintiff believes to be inadequate and/or false. (ECF No. 29 ¶¶ 30-34). Second, for all the reasons discussed above, the Court is satisfied that Plaintiff has pleaded sufficient facts to permit the Court to infer that there is a "reasonable likelihood that the plaintiff would use the facility" but for the barriers preventing equal access. *Garner*, 2013 WL 6731903, at *6.

Alternatively, if the Court hews even more closely to the language of *Spokeo*, as the Third Circuit did in *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478-80 (3d Cir. 2018), the Court arrives at the same conclusion. Plaintiff has alleged the invasion of a legally protected interest. Plaintiff alleges that the ADA requires Defendant to provide accessible beds, parking spaces, and to accurately describe the accessibility status of its hotel, and that Defendant has failed to do what the ADA requires. *See Mielo*, 897 F.3d at 479 (concluding that plaintiffs satisfied this requirement because they "alleged a non-frivolous claim"). This harm is concrete and particularized: Plaintiff would personally encounter difficulty and risk of injury using Defendant's facilities, or framed differently, he is deterred from using Defendant's hotel because of these difficulties and risks. *See id.* at 480, 480 n.15. And this injury is actual or imminent, not conjectural or hypothetical. As discussed at length above, Plaintiff has pleaded sufficient facts to permit a plausible inference that he will, in fact, suffer discrimination by Defendant.[4]

The Court's conclusion that Plaintiff has standing extends to his claims regarding informational deficiencies on Defendant's website. While an informational harm without more may be insufficient to establish Article III standing, *see TransUnion*, 594 U.S. at 441-42, this case does not deal with mere informational harms. As discussed above, Plaintiff has sufficiently pleaded that he will face future discrimination by Defendant (or that he is presently deterred from accessing Defendant's hotel). Therefore, Plaintiff has sufficiently pleaded that he will experience the

---

[4] Framing the injury as the illegal deterrence, Plaintiff has pleaded sufficient facts to support an inference that Plaintiff would visit but for the illegal barriers to access, and therefore, that the Plaintiff has suffered an *actual* injury in that he is presently being deterred from visiting Defendant's hotel. *See Mielo*, 897 F.3d at 480 n.15.

requisite "downstream consequences" of this informational harm. *See Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (quoting *TransUnion*, 594 U.S. at 442).[5]

The cases cited by Defendant to not persuade the Court otherwise. Defendant points the Court to decisions in two other cases brought by Plaintiff against hotels in Western Pennsylvania: *Mullen v. DSW Inns, LLC*, No. 23-0520, 2024 WL 1095718 (W.D. Pa. Mar. 13, 2024), and *Mullen v. DSW Development Corp.*, No. 23-0518, 2024 WL 1346695 (W.D. Pa. Mar. 29, 2024). (ECF No. 32 at 10). But Defendant fails to appreciate the differences between the complaints in those cases and the Second Amended Complaint here. The *DSW Inns* complaint asserted only that the plaintiff

> desires to patronize accessible hotels in the Pittsburgh Airport, Robinson Township, Route 376 Corridor for two independent reasons: a) he desires to stay in a hotel when using the Pittsburgh Airport as he travels to the west coast to visit family; and b) he desires to stay in a hotel while using the shopping and entertainment facilities in the area.

First Am. Compl. ¶ 42, *Mullen v. DSW Inns, LLC*, No. 23-0520 (W.D. Pa. June 29, 2023), ECF No. 14. But the *DSW Inns* complaint did not allege any facts about when the plaintiff might stay at the defendant's hotel, *DSW Inns, LLC*, 2024 WL 1095718, at *5, nor did it include information about why the plaintiff would stay at the defendant's hotel over others. So too with the complaint in *DSW Development Corp. See* First. Am. Compl., *Mullen v. DSW Dev. Corp.*, No. 23-0518 (W.D. Pa. June 29, 2023), ECF No. 15. Simply put, the complaints dismissed by Judges Hardy and Bissoon in *DSW Inns* and *DSW Development Corp.* are too dissimilar to the Second Amended Complaint to sway the Court's analysis.

Similarly, the Court is not persuaded that *Giterman v. Pocono Medical Center*, 361 F. Supp. 3d 392 (M.D. Pa. 2019), counsels a contrary conclusion. There, the plaintiff "did not

---

[5] Because the Court concludes that Plaintiff has sufficiently pleaded standing on other grounds, it need not address whether—in the absence of an injury under another theory—Plaintiff would have standing as a "tester."

testify that she had any definite plan to return to PMC." *Id.* at 407. The court determined that the plaintiff "merely testified that it is possible she would return to PMC" and concluded that her "speculative testimony is not sufficient to establish standing." *Id*. at 406. As an initial matter, *Giterman* was decided at the summary judgment stage, a stage at which a plaintiff has to pony up hard evidence. But more importantly for present purposes, as discussed above, Plaintiff here has pleaded concrete information about his non-speculative travel plans: he has indicated when he plans to go to Defendant's hotel, why he plans to go, and how often he plans to go.

So too with *Mahoney v. Waldameer Park, Inc*., No. 20-3960, 2021 WL 1193240 (E.D. Pa. Mar. 30, 2021). The amended complaint in *Mahoney* included no assertions—absolutely none— about the plaintiff's plans to visit the defendant's public accommodation beyond a "vague, brief, unsupported assertion of intent to visit . . . once access barriers are removed." *Id.* at *5; *see* First Am. Class Action Compl., *Mahoney v. Waldameer Park, Inc*., No. 20-3960 (E.D. Pa. Nov. 3, 2020), ECF No. 8.

And such is the case with *Laufer v. Mann Hospitality, L.L.C.*, 996 F.3d 269 (5th Cir. 2021), *Laufer v. Looper*, 22 F.4th 871 (10th Cir. 2022) and *Laufer v. Ganesha Hospitality LLC*, No. 21-995, 2022 WL 2444747 (2d Cir. July 5, 2022). In each of those cases, the plaintiff alleged that she would travel to the area near the hotel "as soon as the Covid crisis is over and it is safe to travel." *Mann*, 996 F.3d at 272; *Looper*, 22 F.4th at 875; *Ganesha*, 2022 WL 2444747, at *2. Plans to travel once the Covid crisis is over or when it is safe to do so are far less definite than Plaintiff's travel plans at issue here, by orders of magnitude. Those cases are not this one.

### III. Conclusion

Because Plaintiff has adequately pleaded that he will suffer an injury in fact, that this injury is attributable to Defendant's challenged conduct, and that this injury can be redressed by the

Court, the Court concludes that Plaintiff has sufficiently alleged that he has standing to bring this suit.

      Therefore, Defendant's Motion (ECF No. 31) is DENIED. An appropriate Order will enter.

                                                                       <u>s/ Mark R. Hornak</u>
                                                                       Mark R. Hornak
                                                                       Chief United States District Judge

Dated:  September 30, 2024